**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERTO PARADISO, JANICE PARADISO, PRINCIPIO PARADISO and GIOVANNA PARADISO,<br><br>*Plaintiffs*,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br><br>*Defendants*. | Civil No. 2:22-02042 (KSH) (CLW)<br><br><br><br><br>**OPINION** |

**Katharine S. Hayden, U.S.D.J.**

I.      **Introduction**

In this matter, Roberto, Janice, Principio, and Giovanna Paradiso ("plaintiffs") allege that defendant Bank of America, N.A. ("Bank of America") fraudulently induced them to execute a credit line agreement and mortgage and then charged them excessive hidden fees.  They assert claims for money damages for common law breach of fiduciary duty and violations of the New Jersey Consumer Fraud Act, as well as a claim to quiet title.  Presently before the Court is Bank of America's motion (D.E. 4) to dismiss the complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  The motion is fully briefed, and the Court decides it without oral argument pursuant to L. Civ. R. 78.1.

II.      **Background**

The facts are gleaned from the complaint (D.E. 1-1, Compl.) and the loan documents attached to Bank of America's motion to dismiss.  On January 5, 2007, plaintiffs executed a

Bank of America Equity Maximizer Agreement and Disclosure Statement (the "credit line agreement") in exchange for a $300,000 line of credit.  (Compl. ¶ 6; *see* D.E. 4-3, Agmt.)  To secure their obligations, they executed a mortgage on their property in Jersey City, New Jersey.  (Compl ¶ 6; *see* D.E. 4-4, Mortgage.)[1]  Plaintiffs generally allege that they "were induced into [this] fraudulent mortgage," without providing factual support.  (*Id.* ¶ 7.)[2]

Plaintiffs made their mortgage payments for the first few years but as time passed, Bank of America stopped sending them monthly statements or otherwise responding to their inquiries regarding the "status or validity" of their mortgage.  (*Id.* ¶¶ 18-19.)  Consequently, plaintiffs "had reason to believe the[ir] mortgage was no longer valid and encumbering said real property" and so they stopped making payments in January 2010.  (*Id.* ¶¶ 9, 55.)

Ten years later, Roberto Paradiso filed for bankruptcy.  (*Id.* ¶ 10.)  In connection with the bankruptcy, Bank of America furnished a $323,864.70 payoff—an amount higher than the original $300,000 mortgage loan—and provided plaintiffs with a notice that included unexplained fees.  (*Id.* ¶¶ 12, 31.)  Plaintiffs filed a grievance with Bank of America regarding the payoff amount, but they never received an adequate explanation for the discrepancy.  (*Id.* ¶¶ 13-14, 20.)

On January 14, 2022, plaintiffs filed a five-count complaint in Hudson County.  (D.E. 1-1.)  Counts 1 and 2 allege violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2, 2.2 (the "CFA"), and Count 3 alleges common law breach of fiduciary duty.  (*See id.* ¶¶ 15-31.)

---

[1] Only Janice and Roberto Paradiso are parties to the credit line agreement and mortgage, but the complaint consistently references "plaintiffs" generally.  To avoid confusion, the Court's factual recitation will track the complaint.

[2] Plaintiffs cite two case dockets and allege that Bank of America was "charged with involvement in fraudulent mortgages."  (*Id.* ¶ 8.)  Plaintiffs do not claim to be parties to either action.

Counts 4 and 5 are claims to quiet title under statute, asserting that plaintiffs have "perfect title" and Bank of America should be "permanently enjoined from asserting any adverse claim . . . to the property." (*See id.* ¶¶ 32-35, 53-58.) Relying on diversity jurisdiction, Bank of America removed the case to this Court on April 8, 2022. (D.E. 1.)

Bank of America has now moved to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and raises three discrete arguments in support: *first*, Principio and Giovanna Paradiso lack standing to sue under Rule 12(b)(1) because they are not parties to the credit line agreement or mortgage; *second*, the CFA and breach of fiduciary duty claims are barred by the economic loss doctrine because those claims stem from the credit line agreement and mortgage; and *third*, all causes of action in the complaint lack the requisite specificity to withstand Rule 12(b)(6) scrutiny. (*See* D.E. 4-1, Mov. Br. at 3; *see generally* D.E. 7, Reply Br.) In opposition, plaintiffs argue that their causes of action are sufficiently alleged to survive Bank of America's 12(b)(1) and 12(b)(6) challenges. (D.E. 6, Opp. Br. at 2-6.)

## III.    Rule 12(b)(1) Challenge

The Court begins with Bank of America's argument that Principio and Giovanna Paradiso must be dismissed from this action under Rule 12(b)(1) because they lack standing to sue, which is an attack on the Court's subject matter jurisdiction. "In the face of a jurisdictional challenge, the Plaintiff has the burden to prove that the Court has jurisdiction." *Bd. of Trustees of Trucking Emps. of N. Jersey Welfare Fund, Inc. v. Caliber Auto Transfer, Inc.*, 2010 WL 2521091, at *8 (D.N.J. June 11, 2010) (Debevoise, J.) (citing *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006)).

Here, Principio and Giovanna lack standing because they are not parties to the credit line agreement and mortgage that are central to plaintiffs' causes of action. *See Glenn v. Hayman*,

2007 WL 894213, at *10, n. 16 (D.N.J. Mar. 21, 2007) (Sheridan, J.) ("Plaintiffs, non-parties to Defendants' contracts, have no standing to sue[.]"); *accord Schiano v. MBNA*, 2013 WL 2452681, at *25-26 (D.N.J. Feb. 11, 2013) (Hammer, M.J.), *aff'd*, 2013 WL 2455933 (D.N.J. June 3, 2013) (Linares, J.) (recognizing judicial consensus that "a borrower, as a non-party to the assignment documents it [is] challenging, lack[s] standing to attack them"). That plaintiffs seek relief under New Jersey's quiet title statute, which broadly allows "[a]ny person in the peaceable possession of lands in this state and claiming ownership thereof" to bring a quiet title action, does not compel a contrary conclusion. *See* N.J.S.A. 2A:62-1. The complaint offers no explanation of who Principio and Giovanna are or what their relationship is to the other plaintiffs, let alone how they were involved in the events underlying this action. In light of the paucity of plaintiffs' allegations, their singular reference in the complaint to Principio and Giovanna's co-ownership of the property (*see* Compl. ¶ 1) rings hollow and falls far short of the pleading requirements imposed by New Jersey's Court Rules in any event. *See* N.J. Ct. R. 4:62-1 (quiet title complaint "shall state the manner in which plaintiff either acquired title or the right to possession").

Accordingly, plaintiffs have not satisfied their burden of establishing Principio and Giovanna's standing to sue Bank of America. Its Rule 12(b)(1) motion is therefore granted.

## IV.   Rule 12(b)(6) Challenge

### a.  Standard of Review

Under Fed. R. Civ. P. 8(a)(2) pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Detailed factual allegations are not necessary, though the complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and "'a formulaic recitation of the elements of a cause of

action will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007)).  To withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" meaning the plaintiff has pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Twombly*, 550 U.S. at 570).  The burden is on the movant to show that the plaintiff has not adequately pleaded its claims.  *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 272 n. 14 (3d Cir. 2016).

Bank of America has attached the credit line agreement and mortgage to its motion papers.  (*See* D.E. 4-3, 4-4.)  The Court may rely on documents that are "*integral to or explicitly relied upon in the complaint*" without converting the motion to dismiss into a motion for summary judgment.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal citations and quotations omitted); *see Taggart v. Wells Fargo Home Mortg., Inc.*, 2010 WL 3769091, at *4 n. 5 (E.D. Pa. Sept. 27, 2010) (considering mortgage documents attached to motion to dismiss, reasoning that a court "may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document" (quoting *Miller v. Clinton Cnty.*, 544 F.3d 542, 550 (3d Cir. 2008))).  Plaintiffs have not disputed the authenticity of the credit line agreement and mortgage, and they are integral to the allegations in the complaint.  As such, the Court considers them in ruling on Bank of America's motion.

### b.  Plaintiffs' Tort Claims

#### i.  Counts 1 and 2: Violations of the CFA

The CFA "is an expansive 'legislative broadside against unsavory commercial practices'
in the marketplace." *Est. of Cotton v. Senior Plan. Servs., LLC*, 2020 WL 7022740, at *8 (D.N.J.
Nov. 30, 2020) (Wolfson, J.) (quoting *All the Way Towing, LLC v. Bucks Cnty. Int'l, Inc.*, 236
N.J. 431, 434 (2019)).  It "provides a private cause of action to consumers who are victimized by
fraudulent practices in the marketplace." *Block v. Seneca Mortg. Servicing*, 221 F. Supp. 3d 559,
593 (D.N.J. 2016) (Wolfson, J.) (quoting *Gonzalez v. Wilshire Credit Corp.*, 207 N.J. 557, 576
(2011)).

Although the CFA is remedial legislation and is construed broadly, *see Est. of Cotton*,
2020 WL 7022740, at *8, the heightened pleading requirements of Fed. R. Civ. P. 9(b) apply to
CFA claims.  *See Maniscalco v. Brother Int'l Corp.*, 627 F. Supp. 2d 494, 499-500 (D.N.J. 2009)
(Wolfson, J).  Accordingly, a plaintiff asserting a CFA claim must "support its allegations 'with
all of the essential factual background that would accompany the first paragraph of any
newspaper story—that is, the who, what, when, where and how of the events at issue.'" *United
States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir.
2016) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)).
*See Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (to meet particularity
requirement, plaintiff must "plead or allege the date, time and place of the alleged fraud or
otherwise inject precision or some measure of substantiation into a fraud allegation").

To state a claim under the CFA, a plaintiff must allege that: (i) the defendant engaged in
an unlawful practice; (ii) the plaintiff suffered an ascertainable loss; and (iii) there exists a causal
relationship between the defendant's unlawful practice and the plaintiff's loss.  *See Frederico*,

507 F.3d at 202-03.  Turning to the first element, plaintiffs claim that Bank of America's actions give rise to a violation of both N.J.S.A. 56:8-2, which prohibits fraud in connection with the sale of goods, services, or real estate, and N.J.S.A. 56:8-2.2, which provides that "[t]he advertisement of merchandise as part of a plan or scheme not to sell the item or service so advertised or not to sell the same at the advertised price is an unlawful practice and a violation of the [CFA]."  They allege that Bank of America "induced [them] into a fraudulent mortgage," and engaged in a "scheme" in which it charged excessive hidden fees.  They also allege that Bank of America failed to answer their inquiries regarding the status of their mortgage.  (*See* Compl. ¶¶ 7, 9, 17-20, 22, 26.)

Plaintiffs' CFA claims fail at the first step of the inquiry, as their allegations fall short of asserting an "unlawful practice" under Rule 9(b)'s heightened pleading requirements.  Albeit they assert they were "induced" into a fraudulent mortgage, there are no facts describing how that inducement came about.  The complaint lacks any recital of what was said (or not said) about the credit line agreement and mortgage that caused plaintiffs to execute the documents, who at Bank of America made relevant statements or omissions, and when all of that happened.  *See Rait v. Sears, Roebuck & Co.*, 2009 WL 250309, at *5 (D.N.J. Feb. 3, 2009) (Linares, J.) (dismissing CFA claim where plaintiff's assertions were "merely broad conclusions" that failed to "'inject sufficient precision into the allegations of fraud'" (quoting *Palmeri v. LG Electronics USA, Inc.*, 2008 WL 2945985, at *3 (D.N.J. July 30, 2008) (Greenaway, J.))).  Plaintiffs further allege that Bank of America "did not respond to any inquiries" once they executed the credit line agreement and mortgage (*see* Compl. ¶ 9), but fail to specify how, when, or to whom they made those inquiries.  Their allegation that Bank of America charged "hidden" fees fares no better; it suffers from a lack of specificity and is contradicted by the terms of the parties' credit line

agreement, which expressly provides for the assessment of late charges and other fees (Agmt. ¶ 15).  *See Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 515 (D.N.J. 2009) (Simandle, J.), *aff'd*, 374 F. App'x 341 (3d Cir. 2010) (dismissing CFA claim where alleged unlawful act was "unequivocally belied by the plain terms of the parties' Agreement").

Finally, as to the remaining elements of a CFA claim, plaintiffs merely parrot the elements by alleging that Bank of America's conduct proximately caused their "ascertainable loss" (*see* Compl. ¶¶ 27-28), without giving facts about what their loss is or how Bank of America caused it.  *Cf. Hoffman v. DSE Healthcare Sols., LLC*, 2014 WL 2119753, at *5 (D.N.J. May 21, 2014) (Linares, J.) (dismissing common law fraud claim where the complaint "simply parrot[ed] the element[s] of the cause of action" and lacked specific details).  In light of these deficiencies, plaintiffs' CFA claims are dismissed.

### ii.  Count 3: Breach of Fiduciary Duty

"In order to establish a claim for breach of fiduciary duty, a plaintiff must plead the following: (1) the defendant had a duty to the plaintiff, (2) the duty was breached, (3) injury to plaintiff occurred as a result of the breach, and (4) the defendant caused that injury." *Gen. Motors LLC v. Ashton*, 2021 WL 2549498, at *9 (D.N.J. June 22, 2021) (Kugler, J.).  As to the first element, "loan servicers generally do not owe a fiduciary duty to borrowers."  *Manetta v. Navient Corp.*, 2021 WL 2886115, at *6 (D.N.J. July 8, 2021) (Wigenton, J.); *see Gonzalez v. U.S. Bank Nat. Ass'n*, 2015 WL 3648984, at *5 (D.N.J. June 11, 2015) (Arleo, J.) (dismissing fiduciary duty claim against mortgage servicer and citing *Galayda v. Wachovia Mortg., FSB*, 2010 WL 5392743, at *13 (D.N.J. Dec. 22, 2010) (Wolfson, J.) for proposition that "[i]t is well-established that a bank does not owe a legal duty to a borrower"); *cf. Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47, 53 (3d Cir. 1988) ("It ordinarily would be anomalous to

require a lender to act as a fiduciary for interests on the opposite side of the negotiating table."

(citations and quotations omitted)).  Accordingly, "a duty may be created only where the servicer

knows or has reason to know that the customer/borrower places special trust or confidence or

reliance on information provided by the lender or borrower."  *Manetta*, 2021 WL 2886115, at *6.

Here again the complaint is deficient.  Plaintiffs allege in broad strokes that Bank of

America "had a duty to ensure that their actions and mode of operation did not result in a

hazardous, defective, and/or dangerous condition, and to provide appropriate warnings to

[them]," and that, "as mortgage holder and servicer, [Bank of America] owe[d] a duty to

[plaintiffs] to not charge hidden or excessive fees, or enter into fraudulent mortgages."  (Compl.

¶¶ 4, 30.)  After that, they do not put forth any facts regarding their specific interactions with

Bank of America—let alone facts that could give rise to a special relationship of trust or

confidence.

Plaintiffs' cited cases do not compel a contrary conclusion.  In *United Jersey Bank v.

Kensey,* 306 N.J. Super. 540, 557 (App. Div. 1997), the appellate division affirmed the trial

court's finding on summary judgment that no fiduciary duty existed between a bank and

mortgagor, but recognized that a fiduciary duty could exist in "egregious" circumstances where a

"bank actively encouraged the plaintiff to rely upon its advice and concealed its self-interest in

promoting the transaction involved."  Those extreme circumstances were not before the court in

*Kensey*; nor are they alleged here.  Plaintiffs' remaining cases are similarly inapposite.  *See

Capital Bank v. MVB, Inc.*, 644 So.2d 515, 519-20 (Fla. Dist. Ct. App. 1994) (affirming trial

court's judgment on breach of fiduciary duty claim and finding that bank breached fiduciary duty

to borrower where loan officer "pressured [borrower] to enter into a series of transactions," and

"urged" borrower to trust him); *Cent. States Stamping Co. v. Terminal Equip. Co.*, 727 F.2d

1405, 1408-09 (6th Cir. 1984) (affirming district court's judgment and finding that officer had

duty to disclose facts suggesting customer's financial instability, where officer knew that

purchaser had confidence in officer's knowledge).

As can be seen, the foregoing authority (aside from its questionable precedential value),

rests on events and incidents that involve identified individuals who acted in specified ways.  No

such recitals appear in the complaint, which is manifestly insufficient to support the theory

behind Count 3, and that count is dismissed.[3]

### c.  Counts 4 and 5: Claim to Quiet Title

Plaintiffs' claim to quiet title is governed by New Jersey statute.  *See Pillitteri v. First*

*Horizon Home Loans*, 2015 WL 790633, at *7 (D.N.J. Feb. 25, 2015) (Wolfson, J.) ("New

Jersey statute establishes the pleading requirements for a quiet title action").  Count 4 of the

complaint cites N.J.S.A. 2A:62-1, which provides as follows:

> Any person in the peaceable possession of lands in this state and claiming
> ownership thereof, may, when his title thereto, or any part thereof, is denied or
> disputed, or any other person claims or is claimed to own the same, or any part
> thereof or interest therein, or to hold a lien or encumbrance thereon, and when no
> action is pending to enforce or test the validity of such title, claim or encumbrance,
> maintain an action in the superior court to settle the title to such lands and to clear
> up all doubts and disputes concerning the same.

As the statute makes clear, "[t]he function of an action to quiet title is to empower a person, who

is in peaceable possession of realty as an owner, a means to compel any other person, who

---

[3] The Court need not reach Bank of America's alternative argument that the economic loss
doctrine bars plaintiffs' tort claims (*see* Mov. Br. at 6-7) but notes for completeness that
plaintiffs' failure to sufficiently allege an independent duty casts serious doubt on whether their
tort claims would survive an economic loss doctrine analysis.  *See G & F Graphic Servs., Inc. v.
Graphic Innovators, Inc.*, 18 F. Supp. 3d 583, 589 (D.N.J. 2014) (Irenas, J.) (economic loss
doctrine bars tort claims if the plaintiff "seeks to enhance the benefit of the bargain [it]
contracted for," but does not bar claims alleging that the defendant "breached a duty owed to the
plaintiff that is independent of the duties that arose under the contract" (internal citations and
quotations omitted)).

asserts a hostile right or claim, or who is reputed to hold such a right or claim, to come forward and either disclaim or show his right or claim, and submit it to judicial determination." *Pillitteri*, 2015 WL 790633, at *7 (internal citations and quotations omitted).  To succeed in such an action, plaintiffs "must rely upon the strength of their own title and not upon the weakness of that of the defendants." *Oliver v. Bank of Am., N.A.*, 2014 WL 1429605, at *2 (D.N.J. Apr. 14, 2014) (Bumb, J.) (quoting *Dudley v. Meyers*, 422 F.2d 1389, 1394-95 (3d Cir. 1970)).

Notwithstanding, plaintiffs fail to argue that their claim to title is strong, and contend instead that Bank of America's is weak because N.J.S.A. 2A:50-56.1(c) imposes a six-year statute of limitations period for residential foreclosure actions.  Addressing this, the Court finds plaintiffs are simply wrong.  As a glaring initial matter, a statute of limitations defense cannot form the basis of plaintiffs' quiet title claim—they "must rely upon the strength of their own title and not upon the weakness of that of [Bank of America]." *Oliver*, 2014 WL 1429605, at *2.  Most important, plaintiffs misconstrue the statute on which they rely.  N.J.S.A. 2A:50-56.1 was amended effective April 29, 2019, and its provisions as to time limits are as follows:

> An action to foreclose a residential mortgage shall not be commenced following the earliest of:
>
> a. Six years from the date fixed for the making of the last payment or the maturity date set forth in the mortgage or the note, bond, or other obligation secured by the mortgage . . . ;
>
> b. Thirty-six years from the date of recording of the mortgage, or, if the mortgage is not recorded, 36 years from the date of execution, so long as the mortgage itself does not provide for a period of repayment in excess of 30 years; or
>
> c. Six years from the date on which the debtor defaulted, which default has not been cured, as to any of the obligations or covenants contained in the mortgage or in the note, bond, or other obligation secured by the mortgage . . . [.]

Before the amendments, N.J.S.A. 2A:50-56.1(c) imposed a 20-year limitations period from the date of default.  *See* P.L.2009, c. 105 (C.2A:50–56.1), 2019 NJ Sess. Law Serv. Ch. 67.

Significantly, the notes to the 2019 amendment explicitly state that the amended six-year limitations period only applies to "residential mortgages *executed on or after the effective date*" of the amendment (*i.e.*, April 29, 2019).  *See id.*, n. 2 (emphasis added.)  As the complaint and documentary evidence in the record show, plaintiffs executed their mortgage in January 2007, so the amended limitations period does not apply and inasmuch as they defaulted in January 2010, the applicable 20-year statute of limitations has not yet expired.

Turning, then, to the substance of the quiet title claim, plaintiffs allege that Bank of America has clouded their title by "compel[ing] [them] to obtain a fraudulent mortgage" and by "add[ing] fees and charges without justification to the mortgage."  (*See* Compl. ¶¶ 33-34.)  However, they fail to allege how these actions cast doubt on the status of their property and instead assert only barebones allegations of fraudulent conduct, which are insufficient to state a viable claim.  *See Schiano*, 2013 WL 2452681, at *26 ("One of the elements of a quiet title claim is that there must be some doubt or dispute as to the status of the land."); *see also Boykin v. MERS/MERSCORP*, 2012 WL 1964495, at *2 (D.N.J. May 31, 2012) (Martini, J.) (dismissing quiet title claim premised on barebones allegation that transfer documents were fraudulently fabricated); *Eng. v. Fed. Nat. Mortg. Ass'n*, 2013 WL 6188572, at *3 (D.N.J. Nov. 26, 2013) (Cecchi, J.) (dismissing quiet title claim where plaintiffs failed to allege how purported fraudulent assignments "cloud[ed] title in the mortgage itself").  Moreover, although the complaint seeks to enjoin Bank of America from asserting any adverse claims to the property (*see,* Compl. ¶¶ 35, 58), there is no allegation that Bank of America has already done so.  Accordingly, "no party appears to be contesting the validity of [p]laintiffs' mortgage except [p]laintiffs themselves," *Schiano*, 2013 WL 2452681, at *26, and their quiet title claim must be dismissed.

## V.       Conclusion

For the foregoing reasons, Bank of America's motion (D.E. 4) is granted.  An appropriate order will issue.

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.

Date:  November 23, 2022